**129**

UNITED STATES, Appellee

v.

Ronnie A. CURTIS, Lance Corporal
U.S. Marine Corps, Appellant.

No. 94–7001.
CMR No. 87–3856.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 5, 1996.

Decided June 9, 1997.

For Appellant: *Mary T. Hall* (argued); *Lieutenant Syed N. Ahmad,* JAGC, USNR.

For Appellee: *Captain Daren K. Margolin,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief).

*On Reconsideration*

PER CURIAM:

A general court-martial convened at Camp Lejeune, North Carolina, convicted appellant, contrary to his pleas, of two premeditated murders, three larcenies, wrongful appropriation, burglary, two housebreakings, indecent assault, and willfully damaging government property, in violation of Articles 118, 121, 129, 130, 134, and 108, Uniform Code of Military Justice, 10 USC §§ 918, 921, 929, 930, 934, and 908, respectively. Pursuant to a plea of guilty, appellant was also convicted of disobeying a general order, in violation of Article 92, UCMJ, 10 USC § 892. The court-martial sentenced him to death, and the convening authority approved the sentence.

The Court of Military Review (now the Court of Criminal Appeals) affirmed the findings and sentence. 28 MJ 1074 (1989). We conducted a bifurcated review. In our first review we upheld the constitutionality of the capital punishment procedures for courts-martial. 32 MJ 252 (1991). The Supreme Court upheld the constitutionality of those procedures in *Loving v. United States,* —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). After a plenary review of all remaining issues, we remanded this case to the court below for further review of several issues. 33 MJ 101 (1991). The court below again affirmed. 38 MJ 530 (1993).

After our second plenary review, we affirmed the decision of the court below, with

one judge concurring separately and one judge concurring in part and dissenting in part. 44 MJ 106 (1996). Appellant then requested reconsideration, and this Court ordered further oral argument thereon.

We now grant appellant's petition for reconsideration. After reconsideration, we adhere to our prior decision affirming the findings of guilty, but we reverse the decision of the court below as to sentence.

We conclude that trial defense counsel's performance during the sentencing hearing was deficient and that there is a reasonable probability that there would have been a different result if all available mitigating evidence had been exploited by the defense. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *see also United States v. Curtis*, 44 MJ 106, 171–73 (1996) (Gierke, J., concurring in part and dissenting in part). Accordingly, we need not address the other issues raised in appellant's petition for reconsideration.

For the reasons set out by Judge Crawford in this Court's previous opinion, we adhere to that decision as to findings.

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Navy for remand to the United States Navy–Marine Corps Court of Criminal Appeals. That court may affirm a sentence of life imprisonment and accessory penalties, or order a rehearing on sentence.

SULLIVAN, Judge (dissenting):

I disagree with the new majority on the ineffective-assistance-of-counsel issue. I fail to see why the Court has changed its position on this very important issue and case. Earlier, I stated my view on this question and I adhere to it today. I said:

Another question in this case concerns me. It is whether appellant was denied his Sixth Amendment right to counsel because his defense lawyer in his sentencing argument failed to exploit appellant's voluntary intoxication on the night of these murders for the purpose of avoiding the death penalty. I agree with the principle

opinion that ample evidence of this circumstance was presented to the members but its exploitation posed certain risks for the defense. In any event, I also do not believe it can be fairly said that defense counsel ignored this circumstance in his argument on sentence.

Defense counsel expressly referred to appellant's intoxication in his findings argument as follows:

Okay, so was Lance Corporal Curtis angry when that [the killings] happened? Does anybody at this particular point in time doubt that? Well, just that emotion in and of itself in that degree is sufficient under the law to reduce premeditated murder to unpremeditated murder. But in addition to that you're going to receive another instruction on voluntary intoxication and the judge is going to tell you that voluntary intoxication and its effects upon the mind may, by itself, with nothing else, reduce premeditated murder to unpremeditated murder. So, Lance Corporal Ronnie Curtis was both in a rage and drunk out of his mind and there you have the defense theory as to Mrs. Lotz: Lance Corporal Ronnie Curtis, guilty of the unpremeditated murder of Mrs. Lotz.

Moreover, in his closing argument on sentencing, he expressly linked his plea for mercy to his earlier argument on findings, stating:

When I first spoke with you some days ago I said that there was a third victim in this case and that victim was Lance Corporal Ronnie Curtis. I said it again in my closing argument on the findings and I'm going to say it to you again. Lance Corporal Curtis is the third victim in this case.

Defense counsel's tactical decision to emphasize appellant's positive character traits and the aberrational nature of his conduct on the night in question cannot reasonably be considered ineffective assistance of counsel. His decision to obliquely reference appellant's voluntary intoxication also cannot now be legally questioned. *See Romero v. Lynaugh*, 884 F.2d 871, 877 (5th

Cir.1989) (was a tactical decision not to argue intoxication evidence already before jury), *cert. denied,* 494 U.S. 1012, 110 S.Ct. 1311, 108 L.Ed.2d 487 (1990*); see also Davis v. Executive Director of the Department of Corrections,* 891 F.Supp. 1459, 1464 (D.Col.1995). Viewing both arguments together, I see no constitutionally ineffective assistance of counsel. *See Flamer v. State of Delaware,* 68 F.3d 710, 735 (3d Cir.1995).

There is another tactical reason why defense counsel did not emphasize intoxication in this case. The facts seem to indicate that alcohol was a fuel rather than an excuse in this case. The core of an "alcohol abuse-excuse" case is impairment of a defendant's mental abilities.

Although there is evidence in the record that Curtis did some heavy drinking before the murders,* the fact remains that appellant had sufficient mental and physical abilities to:

1. decide to kill Lieutenant Lotz;

2. successfully break into the supply building;

3. pick a lock on the security cage and steal a Marine Corps K-bar knife (the murder weapon);

4. then go back to his barracks room to get a pair of gloves so he would not leave fingerprints;

5. successfully take a bicycle and ride at night 1.5 miles to LT Lotz' home;

6. hide the bicycle in the back of the Lotz home and conceal the K-bar knife in his waistband;

7. knock on the front door of the Lotz home and verbally trick a Marine officer into letting him inside his home at midnight;

8. with a knife confront and kill that Marine officer with 2 stabs;

9. fight off Mrs. Lotz and kill her with 8 stabs;

10. search the Lotz house and find car keys and money for gas;

11. steal one car from the Lotz house; and

12. return to the Lotz home and steal the other car.

With this record, it is no wonder the defense handled the intoxication defense as they did. The average military jury has the education level of at least a college graduate if the jury member is an officer, and at least a high school graduate if the member is enlisted. The military jury is hard to fool and its intelligence should not be underestimated.

With such a jury and such a record, the "alcohol abuse-excuse" may not have been the best course of action for the defense. Moreover, a smart jury would understand that a blood alcohol content of .06 at 7:00 a.m. the next morning proves nothing about the mental and physical ability of a defendant at midnight 7 hours before. Especially if the jury remembers Curtis took a canteen of gin and Mountain Dew with him on his trip to the Lotz home.

*United States v. Curtis,* 44 MJ 106, 170–71 (1996) (Sullivan, J., concurring).

CRAWFORD, Judge (dissenting):

There have been two reviews by the court below. 28 MJ 1074 (1989) and 38 MJ 530 (1993). This marks the fourth time appellant's case has been heard by this Court. 32 MJ 252 (1991), 33 MJ 101 (1991), and 44 MJ 106 (1996). None of these decisions reversed the findings or sentence. On the issue of ineffectiveness of counsel, there have been no changes in the law or the facts since the trial.

A number of Federal courts have held in capital cases that the defense counsel was not ineffective for failing to introduce intoxication alone or together with other mitigating evidence during the sentencing stage. *White v. Singletary,* 972 F.2d 1218, 1220–21, 1224–26 (11th Cir.1992); *Lashley v. Armontrout,* 957 F.2d 1495, 1497–98 (8th Cir.1992); *Romero v. Lynaugh,* 884 F.2d 871, 876–77 (5th Cir.1989); *Woratzeck v. Ricketts,* 820 F.2d 1450, 1456 (9th Cir.1987). Historically, intoxication has not been considered to be a matter in mitigation but a matter in aggrava-

---

* Appellant on direct examination responded that he consumed "no more" than a pint of alcohol the night of the murders.

tion. *See Montana v. Egelhoff,* —— U.S. ——, ——, 116 S.Ct. 2013, 2017–19, 135 L.Ed.2d 361 (1996).

Thus, for the reasons set forth above and in my earlier opinion, 44 MJ at 118–24, I dissent.