UNITED STATES, Appellee

v.

Joseph L. THOMAS, Sergeant, U.S. Marine Corps, Appellant.

No. 95–7001.

Crim.App. No. 89–1289.

U.S. Court of Appeals for the Armed Forces.

Argued April 8, 1997.

Decided July 24, 1997.

For Appellant: *Joseph B. Gilbert* and *Lieutenant Commander Eric C. Price,* JAGC, USN (argued).

For Appellee: *Lieutenant John R. Livingston, Jr.,* JAGC, USN, and *Major Stephen P. Finn,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, *Commander D.H. Myers,* JAGC, USN, and *Captain Daren K. Margolin,* USMC (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members at Marine Corps Air Station, El Toro, California, between August and November 1988. He was found guilty of the premeditated murder of his wife in violation of Article 118(1), Uniform Code of Military Justice, 10 USC § 918(1). On November 8, 1988, he was sentenced to death. On March 22, 1989, the convening authority approved the findings of guilty and sentence.

On May 1, 1989, appellant's case was docketed with the then—Navy-Marine Corps Court of Military Review. That court issued three decisions on petitions for extraordinary relief or interlocutory motions made by appellant. 33 MJ 644 (1991); 33 MJ 768 (1991); 39 MJ 626 (1993). On June 23, 1995, the now—Navy-Marine Corps Court of Criminal Appeals sitting *en banc* affirmed the findings of guilty and sentence. 43 MJ 550.

On July 19, 1995, appellant's case was docketed at this Court. His brief was ordered to be filed on or before September 18, 1995. Numerous extensions were granted, resulting in appellant's brief being filed on March 20, 1996, averring 73 issues for review. The Government filed its answer with

this Court on June 13, 1996, and appellant filed his reply brief on July 22, 1996. Oral argument was heard on April 8, 1997.

The facts giving rise to appellant's conviction for the brutal, premeditated murder of his wife are fully detailed in the *en banc* decision of the court below. 43 MJ at 561–66. Appellant has raised numerous issues which relate to the findings of guilty, the sentence, or both. We determine that a new sentencing hearing is required under Issue I and order such a hearing. Those issues pertaining to the findings of guilty we resolve in the Government's favor. Accordingly, we affirm the findings of guilty.

— — —

Issue I assigned by appellate defense counsel asks

WHETHER PLAIN ERROR OCCURRED WHEN THE MILITARY JUDGE ERRONEOUSLY AND REPEATEDLY INSTRUCTED THE MEMBERS TO VOTE ON THE SENTENCE OF DEATH FIRST.

The Court of Criminal Appeals found that the judge erred in instructing the members to vote on the sentence of death first, but concluded that this error did not require reversal under the plain-error doctrine. *Id.* at 582–83. We agree that error occurred, but we conclude that a new sentencing hearing is warranted. Art. 67(d), UCMJ, 10 USC § 867(d) (1994).

The President, in the Manual for Courts–Martial, has delineated the procedures for sentencing at courts-martial. *See* RCM 1001–1009, Manual for Courts–Martial, United States, 1984; *see generally* Art. 36, UCMJ, 10 USC § 836. In particular, he has established procedures for the imposition of capital punishment, and the Supreme Court has decided that he is constitutionally authorized to do so. *See Loving v. United States,* —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); RCM 1004. The first question before us is whether the military judge instructed the members of appellant's court-martial in accordance with those mandated procedures. *See State v. Brooks,* 75 Ohio St.3d 148, 661 N.E.2d 1030, 1040–41

(1996)(error to instruct members contrary to state's capital sentencing scheme).

RCM 1005(e)(2) requires a military judge to give the members of a court-martial "[a] statement of the procedures for deliberation and voting on the sentence set out in RCM 1006[.]" RCM 1005(e)(1) also requires the military judge to provide instructions which include "[a] statement of the maximum authorized punishment which may be adjudged and of the mandatory minimum punishment, if any[.]" Finally, RCM 1006(c) provides that any member may propose a sentence for the panel's consideration, and RCM 1006(d)(3)(A) sets forth the order in which these proposals must be voted on by the members. It states:

(A) *Order. All members shall vote on each proposed sentence in its entirety beginning with the least severe and continuing, as necessary, with the next least severe, until a sentence is adopted by the concurrence of the number of members required under subsection (d)(4) of this rule. The process of proposing sentences and voting on them may be repeated as necessary until a sentence is adopted.*

(Emphasis added.)

RCM 1006(d)(4) and (5) delineate the number of votes required to impose different punishments. They state:

(4) *Number of votes required.*

(A) *Death.* A sentence which includes death may be adjudged only if all members present vote for that sentence.

(B) *Confinement for life or more than 10 years.* A sentence which includes confinement for life or more than 10 years may be adjudged only if at least three-fourths of the members present vote for that sentence.

(C) *Other.* A sentence other than those described in subsection (d)(4)(A) or (B) of this rule may be adjudged only if at least two-thirds of the members present vote for that sentence.

\* \* \*

(5) *Mandatory sentence.* When a mandatory minimum is prescribed under Article 118 the members shall vote on a sentence in accordance with this rule.

Finally, the President has promulgated rules that deal specifically with the imposition of capital punishment. In RCM 1004(b), he states, *inter alia:*

(4) *Necessary findings.* Death may not be adjudged unless

(A) The members find that at least one of the aggravating factors under subsection (c) existed;

(B) Notice of such factor was provided in accordance with paragraph (1) of this subsection and all members concur in the finding with respect to such factor; and

(C) All members concur that any extenuating or mitigating circumstances are substantially outweighed by any aggravating circumstances admissible under RCM 1001(b)(4), including the factors under subsection (c) of this rule.

(5) *Basis for findings.* The findings in subsection (b)(4) of this rule may be based on evidence introduced before or after findings under RCM 921, or both.

(6) *Instructions. In addition to the instructions required under RCM 1005, the military judge shall instruct the members of such aggravating factors under subsection (c) of this rule as may be in issue in the case, and on the requirements and procedures under subsections (b)(4), (5), (7), and (8) of this rule.* The military judge shall instruct the members that they must consider all evidence in extenuation and mitigation before they may adjudge death.

(7) *Voting.* In closed session, before voting on a sentence, the members shall vote by secret written ballot separately on each aggravating factor under subsection (c) of this rule on which they have been instructed. Death may not be adjudged unless all members concur in a finding of the existence of at least one such aggravating factor. *After voting on all the aggravating factors on which they have been instructed, the members shall vote on a sentence in accordance with RCM 1006.*

(8) *Announcement.* If death is adjudged, the president shall, in addition to complying with RCM 1007, announce which aggravating factors under subsection (c) of this rule were found by the members.

(Emphasis added.)

 The clear import of these Manual provisions is that the military judge must instruct the members that they are required to vote on a life sentence before they vote on a proposal for a death sentence. In other words, the President, in his wisdom, decided to extend to capital cases the valuable military right to a vote on the least severe sentence first. *See generally United States v. Johnson,* 18 USCMA 436, 437, 40 CMR 148, 149 (1969). This view is reinforced by RCM 1004(b)(7), which states: "After voting on all the aggravating factors on which they have been instructed, *the members shall vote on a sentence in accordance with RCM 1006.*" (Emphasis added.)

Nonetheless, the exact opposite instruction was given by the trial judge in this case.[1]

---

1. Appellant's court-martial took place in November 1988. The particular instruction given by the military judge is not contained in the then—applicable Military Judge's Benchbook, which provided:

**2–61. Death Sentence.**
*Note.* When a case has been referred as capital and when the findings of the court include conviction of an offense for which a sentence of death is authorized, the military judge must instruct the court members on the two tests which must be met before a death sentence may be adjudged. First, the court members must determine unanimously and beyond a reasonable doubt that one or more of the aggravating circumstances specified by the trial counsel under the provisions of RCM 1004(c) have been proven. If so, then the court members must find that the aggravating circum-

stances substantially outweigh any extenuating circumstances before a sentence of death may be adjudged. *Even if aggravating circumstances are found, the Court members must propose sentences and vote on them, beginning with the lightest, as in non-capital cases.*

\* \* \*

MJ: You may consider all the evidence in the case, including the evidence presented prior to the findings of guilty, as well as the evidence presented during this sentencing hearing. Your deliberation on the aggravating circumstance(s) should properly include a full and free discussion of all the evidence that has been presented. After you have completed your discussion, then voting on (the) (each) aggravating circumstance must be accomplished by secret written ballot, and all members are required to vote.

*See State v. Brooks, supra* at 1040 (judge erroneously instructed jury they had to unanimously rule out death penalty before considering a life sentence). The military judge instructed the members that they had to first consider a proposed sentence of death before they could consider a sentence of confinement for life. *See generally Davis v. Executive Director of Department of Corrections*, 100 F.3d 750, 775 (10th Cir.1996) (court recognizes reasonable-likelihood standard for determining what instruction conveyed). He stated:

> Counsel has referenced the maximum punishment as I have stated to be adjudged is death. The minimum punishment relating to confinement is confinement for life. *Should you not find aggravating circumstances or should the vote on death not be unanimous, then you should turn to a consideration of other punishments, the type of discharge.* If the sentence is life imprisonment, that does not, in and of itself, include any other type of punishment. You then must decide on the type of separation, if any, whether dishonorable, bad-conduct, or no discharge. Reduction, I will address that in a moment, though, and forfeitures. You, of course, may order—arrive at a sentence of forfeiture of all pay and allowances, or you may arrive at any sentence that encompasses a portion of forfeitures.
>
> *In regard to the sentence that would include life imprisonment, again, should you not unanimously agree on the aggravating circumstances and should you not agree on a unanimous verdict of death, then the members may propose types of punishments as I have delineated, and*

> *you will vote on those types of punishment.* For example, if a member, in addition to, of course, should you reach that stage of considering the sentence other than death, if a member were to propose a punitive discharge, either dishonorable or a bad-conduct discharge and forfeitures for a certain amount for a certain period of time, and, of course, reduction, you should consider that and vote on that type of a recommendation. Each member may make a recommendation for a type or amount of punishment.

(Emphasis added.)

■ The more important question, however, is whether this error, unobjected to by the defense, was plain error. *See generally United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); RCM 1005(f) (*"Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error."). The Court of Criminal Appeals, relying on this Court's decision in *United States v. Fisher,* 21 MJ 327 (CMA 1986), affirmed by stating: "When viewing the sentencing instructions as a whole, and examining the entire record, we are satisfied that the error did not 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" 43 MJ at 583. We disagree.

Initially, we note that the less-severe-sentence voting rule has a particular significance in the death penalty context overlooked by the court below. Under military law, a death sentence requires a unanimous vote. Art. 52(b)(1), UCMJ, 10 USC § 852(b)(1); RCM 1006(d)(4)(A). However, a sentence to confinement for life requires the vote of only

---

If you fail to find unanimously that (at least one of) the aggravating circumstance(s) existed, then you may not adjudge a sentence of death.
*If, however, you determine that at least one of the aggravating circumstances existed, then you may consider, along with other appropriate sentence possibilities, whether a sentence of death should be adjudged.* In this regard, you may not adjudge a sentence of death unless you find that any and all extenuating or mitigating circumstances are substantially outweighed by

any aggravating circumstances, including such circumstances as you have found existed in the first step of this procedure. Thus, in addition to the aggravating circumstances that you have found by unanimous vote, you may consider the following aggravating circumstances:
Para. 2–61, Military Judge's Benchbook at 2–60 and 61 (Dept. of the Army Pamphlet 27–9 (Change 1, Feb. 1985))(emphasis added). Almost identical language is contained in the current version of the Benchbook, *supra* at 134–35 (Sept. 1996).

three-fourths of the members. Art. 52(b)(2); RCM 1006(d)(4)(B). In appellant's case, therefore, only seven votes were required for the less severe punishment, confinement for life, two less than the nine votes required for death. Thus, the members could have imposed a lesser sentence on a lesser vote, a military sentencing reality which favored appellant.

We also note that the lower court's exclusive reliance on *United States v. Fisher, supra,* and *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936), to find no plain error in this case was misplaced. These decisions correctly state the general rule of plain error as follows:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

*Atkinson, supra* at 160, 56 S.Ct. at 392. However, neither one is a death penalty case, and it is the application of the plain error rule in that particular context which was the specific question before the lower court and which is now before this Court. *See generally Kubat v. Thieret,* 867 F.2d 351, 371–72 (7th Cir.1989) (plain error review of state death penalty case).

Regarding Supreme Court precedent, we have considered its more recent decision in *Mills v. Maryland,* 486 U.S. 367, 375, 108 S.Ct. 1860,1865, 100 L.Ed.2d 384 (1988). In that case, there was no objection at trial to the erroneous capital sentencing instructions which were given. *See Mills v. State,* 310 Md. 33, 527 A.2d 3, 14 (1987). The Supreme Court nonetheless held that a remand for resentencing was appropriate because the sentencing instructions created the "risk [of] erroneous imposition of the death sentence," and because the court could not "rule out the substantial possibility" that such a mistake had occurred. *Id.* at 375, 377, 108 S.Ct. at 1865, 1866; *see also Kubat, supra* at 373. The reason for the Supreme Court's approach was articulated as follows:

> The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

*Mills, supra* at 383–384, 108 S.Ct. at 1869–1870; *see generally Woodson v. North Carolina,* 428 U.S. 280 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) ("the penalty of death is qualitatively different from a sentence of imprisonment, however long").

Moreover, *Fisher* clearly does not support the lower court's finding of no plain error. *Fisher* did not hold that a violation of the long-standing military rule of voting on the most lenient sentence first was *per se* harmless. *See generally Johnson,* 18 USCMA at 436, 40 CMR at 148. It held only that a violation of that important rule must be examined in the context of the entire record before a finding of reversible or prejudicial error can be reached. Also, in *Fisher,* the instruction on voting for the least severe sentence first was simply omitted, while in appellant's case an entirely contrary instruction was given. *See Brooks,* 661 N.E.2d at 1041. Finally, in *Fisher,* the servicemember only received a 6–month sentence to confinement, which was further reduced by the convening authority to 3 months. In sum, *Fisher* is not dispositive of appellant's death penalty appeal.

The court below also indicated that the other sentencing instructions in this case somehow rendered the military judge's erroneous instruction harmless. On this point, we again disagree. The military judge, later on in his instructions, reinforced his erroneous view of the voting order in this case. He said:

> When you have completed your discussion, then any member who desires to do so, may propose a sentence. You do that by writing out on a slip of paper a com-

plete sentence. This applies in the second portion, as I have instructed you, after you had read the exhibits, considered and talked about the matter, then you vote, first, on aggravating factors.

*Again, as I stated before, should there be a unanimous vote on one or both of the aggravating factors, then you turn to all of the sentences on Page Two, death or life, the most serious, of course, is death.* Any proposed sentence you vote on—after you've collected any proposed sentence when you reach that stage, the junior member will collect the proposed sentences, submit them to the president, he'll arrange them in their order of their severity. You vote on the proposed sentence by secret written ballot, all must vote. *You vote on each sentence in its entirety beginning with the lightest* until you arrive at your required concurrence of two-thirds of the members, *with the exception, of course, as I've stated, in this regard, you vote on the aggravating circumstances, then you vote on the sentence of death. If it is not by unanimous vote, then you turn to the consideration of the other applicable portions of the sentence worksheet.* The junior member will collect and count the votes. The count is checked by the president, who will announce the result of the ballots to the members.

In regard to the voting, if you do not arrive at a sentence by the required concurrence of two-thirds, then you repeat the process of discussion and revoting in relation to the second portion that I've talked about. I don't want to go over that again and again. Do you understand what I'm talking about?

(Emphasis added.) This instruction compounded the military judge's initial instructional error by making clear that the members had to vote on death first.

Finally, we are persuaded that the entire record of trial does establish a substantial possibility that appellant was prejudiced by the military judge's instructional error. *See generally Mills v. Maryland* and *Kubat v. Thieret,* both *supra.* The prosecution did not present any evidence on sentencing other than the general data from the charge sheet. Its argument for death focused exclusively on the heinous nature of appellant's act of murdering his pregnant wife. The defense presented extensive evidence humanizing appellant within his family context, extolling his military career, and seeking mercy on behalf of his children. While we offer no view on this difficult question, we all agree that the members' decision to put appellant to death cannot be sustained in these circumstances. The military judge's erroneous instructions undermine our confidence in the reliability of this sentence because they create an intolerable risk that this ultimate sanction was erroneously imposed. *See generally Austin v. Bell,* 938 F.Supp. 1308, 1322 (M.D.Tenn.1996) ("By misinforming the jury about state law the trial judge impermissibly swayed deliberations in favor of death. . . .").

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed as to findings but is reversed as to sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on sentence may be ordered.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

EFFRON, Judge (concurring):

I concur with the majority's rationale for affirming the findings of guilty and authorizing a sentence rehearing. I write separately simply to note that appellant is not precluded from making appropriate motions at such a rehearing, including a motion to resolve the issue identified in the proceedings below concerning alleged improper reconsideration by the court-martial panel. *See United States v. Thomas,* 39 MJ 626, 641 (NMCMR 1993) (Jones, J., dissenting).