**UNITED STATES, Appellant,**

v.

**Ronnie A. CURTIS, Lance Corporal,
U.S. Marine Corps, Appellee.**

No. 99–5001.
CMR No. 87–3856.

U.S. Court of Appeals for
the Armed Forces.

Argued June 2, 1999.

Decided Sept. 30, 1999.

The Court delivered a per curiam opinion. CRAWFORD, J., filed an opinion concurring in part and dissenting in part.

For Appellant: *Lieutenant Kevin S. Rosenberg*, JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

For Appellee: *Mary T. Hall* (argued); *Lieutenant Dale O. Harris*, JAGC, USNR (on brief).

PER CURIAM:

A general court-martial convicted appellee, Lance Corporal (LCpl) Curtis, of the premeditated murder of his officer-in-charge, premeditated murder of the officer's wife, indecent assault of the officer's wife, and several related offenses, in violation of Articles 92, 108, 118, 121, 129, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 908, 918, 921, 929, 930, and 934, respectively. The court-martial sentenced him to death, and the convening authority approved the sentence.

The Court of Military Review (now the Court of Criminal Appeals), sitting *en banc*,

affirmed the findings unanimously, and affirmed the sentence in a divided vote. 28 MJ 1074, 1095 (1989); *id.* at 1095–96 (Byrne, Chief Judge, concurring in part and dissenting in part); *id.* at 1096–1113 (Albertson, Judge, concurring in part and dissenting in part).

In a bifurcated review, this court upheld the constitutionality of the capital punishment procedures for courts-martial, 32 MJ 252 (1991), and then remanded the case after plenary review of the remaining issues. 33 MJ 101 (1991). The Court of Military Review, sitting *en banc,* again affirmed the findings and sentence with one judge dissenting. 38 MJ 530, 544 (1993); *id.* at 544–45 (Mollison, Judge, dissenting). After a second plenary review, this Court affirmed the decision of the court below. 44 MJ 106 (1996). However, we then granted LCpl Curtis' request for reconsideration and reversed the decision of the court below as to sentence, on the ground that trial defense counsel's performance during the sentencing hearing was deficient. 46 MJ 129 (1997).

The decretal paragraph of our decision on reconsideration stated:

> The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Navy for remand to the United States Navy–Marine Corps Court of Criminal Appeals. That court may affirm a sentence of life imprisonment and accessory penalties, or order a rehearing on sentence.

*Id.* at 130. The Government requested reconsideration of this Court's holding that defense counsel was ineffective, but did not challenge this Court's mandate directing the Court of Criminal Appeals to affirm a life sentence or order a rehearing. Neither the Government's petition for reconsideration nor the certificate for review questioned the wisdom or propriety of vesting the decision whether to order a sentence rehearing in the Court of Criminal Appeals instead of the Judge Advocate General, as does our dissenting colleague. This Court denied the Government's request for reconsideration. 48 MJ 331 (1997).

After our remand, the Government did not exercise its statutory option under 28 USC § 1259 to seek Supreme Court review of our decision as to the ineffectiveness of counsel on sentencing, nor did it challenge our mandate directing the court below to either affirm a sentence of life imprisonment or order a rehearing on sentence.

Our colleague's dissent is based in part on the legal premise that the Judge Advocate General has discretion to decide whether to send a case to the Court of Criminal Appeals after this Court has reversed a decision of that court. Article 67(e), UCMJ, 10 USC § 867(e), expressly authorizes the action taken by our Court in the present case: to "*direct* the Judge Advocate General to return the record to the Court of Criminal Appeals for further review in accordance with the decision of the court." (Emphasis added.)

On remand, the Court of Criminal Appeals, 1998 WL 918810 sitting en banc, affirmed a sentence of life imprisonment. The court's opinion recites the appellate history of the case and states that its decision was reached "[a]fter a careful review of the entire record and in light of the foregoing." Unpub. op. at 2. In the proceedings before the Court of Criminal Appeals, the Government did not challenge the sentence reassessment authority of that court either in the brief or in its motion for reconsideration.

The Judge Advocate General of the Navy certified the following issues:

I

WHETHER COURTS OF CRIMINAL APPEALS HAVE THE AUTHORITY TO REASSESS SENTENCES IN CAPITAL CASES.

II

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION IN THIS CAPITAL CASE BY REASSESSING APPELLANT'S SENTENCE

RATHER THAN ORDERING A RE-HEARING ON SENTENCE.

For the reasons set out below, we answer the first certified question in the affirmative and the second certified question in the negative.

### Issue I: Authority to Reassess a Death Sentence

■ Article 67(e) provides: "After it has acted on a case, the Court of Appeals for the Armed Forces may direct the Judge Advocate General to return the record to the Court of Criminal Appeals for further review in accordance with the decision of the Court." RCM 1204(c)(1), Manual for Courts–Martial, United States (1998 ed.),* contains almost identical language.

Article 66(c), UCMJ, 10 USC § 866(c), provides that a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." In *Jackson v. Taylor*, 353 U.S. 569, 578, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957), the Supreme Court traced the legislative history of Article 66(c) and held that the board of review (now the Court of Criminal Appeals) acted within its authority under Article 66(c) when it reduced a life sentence to confinement for 20 years. In *United States v. Russo*, 11 USCMA 352, 358, 29 CMR 168, 174 (1960), this Court, citing *Jackson v. Taylor*, held that a board of review had authority to reduce a death sentence to life imprisonment. In *United States v. Murphy*, 50 MJ 4, 16 (1998), this Court gave the Army Court of Criminal Appeals the same option as in appellee's case, *i.e.*, to cure defective representation during the sentencing hearing by affirming a life sentence or ordering a rehearing. In view of the foregoing statutes and precedents, we hold that the sentence reassessment authority of the Courts of Criminal Appeals includes capital cases.

The Government argues that there was no sentence to be reassessed after this Court set aside the death sentence. It relies on a sentence in *United States v. Gonzalez–Candelaria*, 27 MJ 402–03 (1988), that says, "If the sentence had been set aside by the Court of Military Appeals, we would have no sentence to reassess."

The Government takes the sentence from *Gonzalez–Candelaria* out of context. The decision set up a straw man and then knocked it down, explaining that the sentence was set aside conditionally and that the court below was empowered to reassess the sentence if no rehearing was conducted. In the present case, we did not set aside the sentence of the court-martial. We set aside that portion of the Court of Criminal Appeals' opinion that affirmed the death penalty, which left that court with the option of affirming the remaining portion of the sentence—confinement for life, or authorizing a capital rehearing. The court below stated: "[W]e hereby *affirm* a sentence of imprisonment for life." Unpub. op. at 2 (emphasis added).

Finally, the Government argues that only a court-martial composed of members may impose a death sentence, and thus the court below had no authority to "impose" sentence in a capital case. This Court rejected a similar argument in *Russo*. The Court of Criminal Appeals did not "impose" a sentence; rather, as noted above, it affirmed a sentence of imprisonment for life.

We hold that the plain language of Article 67 authorized this Court's remand to the Court of Criminal Appeals. We further hold that the plain language of Article 66(c), its legislative history, and the precedents of the Supreme Court and this Court interpreting Article 66(c) provide ample authority for the Court of Criminal Appeals to cure an error in the imposition of a death sentence by reassessing the sentence to life imprisonment. The court below could confidently say that a life sentence would have been adjudged at the court-martial absent the error, because a life sentence was the mandatory minimum. Accordingly, we answer the first certified question in the affirmative.

---

* The current version of RCM 1204 is identical to the one in effect at the time we reversed the decision of the court below as to sentence and remanded.

*Issue II: Abuse of Discretion*

■ The Government asserts that the Court of Criminal Appeals abused its discretion on the ground that the court, in the Government's view, did not explain its decision. While conceding that Courts of Criminal Appeals generally are not required to explain their decisions, the Government argues that it is necessary in a capital case to ensure public confidence and to ensure that the court has not applied an incorrect legal standard.

At the outset, we note that the Court below provided an explanation for its decision, noting that it was based upon "a careful review of the entire record" and that it was made "in light of" the prior proceedings in the case. The question raised by the Government is whether this explanation is inadequate as a matter of law.

In *United States v. Clifton,* 35 MJ 79, 81 (CMA 1992), this Court held that Courts of Criminal Appeals are not required to explain their decisions. Most recently, in *United States v. Stuart,* 50 MJ 72 (1999), this Court declined to presume that the court below erroneously applied the law, even though the court below did not expressly state the legal basis for its decision. Because the court below in this case was not required to explain its decision, we need not weigh the sufficiency of the explanation that was provided.

In *United States v. Taylor,* 47 MJ 322 (1997), this Court held: "When prejudicial error occurs at trial, the Court of Criminal Appeals may reassess the sentence instead of ordering a sentencing rehearing if the court is convinced that appellant's sentence 'would have been at least of a certain magnitude.'" *Id.* at 324, quoting *United States v. Sales,* 22 MJ 305, 307 (CMA 1986). In *Sales,* this Court held that if the Court of Criminal Appeals can determine that the sentence "would have been at least of a certain magnitude," then it "need not order a rehearing on sentence, but instead may itself reassess the sentence." *See also United States v. Davis,* 48 MJ 494, 495 (1998).

Nothing in the record suggests that the Court of Criminal Appeals did not follow *Taylor* and *Sales.* Since it was the statutory

minimum, the Court of Criminal Appeals was able to discern that the sentence would have been at least life imprisonment. *See* Art. 118.

The Government's complaint about the lack of detailed explanation from the court below appears to be directed less at the court's determination that the sentence "would have been at least of a certain magnitude," and more at the decision not to order a rehearing. The flaw in the Government's position is that it inverts the decision process. The court below was not required to consider a rehearing unless it determined that it could not reliably reassess the sentence.

In *Davis,* this Court set out the standard for reviewing sentence reassessments by the court below: "We will only disturb the [lower court's] reassessment in order to 'prevent obvious miscarriages of justice or abuses of discretion.'" 48 MJ at 495, quoting *United States v. Jones,* 39 MJ 315, 317 (CMA 1994). In *United States v. Travers,* 25 MJ 61, 62 (CMA 1987), this Court defined "abuse of discretion" as follows:

> To reverse for "an abuse of discretion involves far more than a difference in ... opinion.... The challenged action must ... be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal."

Applying these standards, we hold that the Court of Criminal Appeals did not abuse its discretion. Accordingly, we answer the second certified question in the negative.

*Decision*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

CRAWFORD, Judge (concurring in part and dissenting in part):

This case has had an unfortunately long and tortured history. I continue to disagree with the majority as to its holding that appellant received ineffective assistance of counsel at sentencing. *United States v. Curtis,* 46 MJ 129, 131 (1997) (Crawford, J., dissenting).

As to the certified issues presented before this Court, I agree with the majority that the court below had the authority to reassess appellant's sentence and did not abuse its discretion in so doing. However, it is the action of the majority of this Court in the decretal paragraph of its decision on reconsideration, *Id.* at 130, that is unwise. Accordingly, we have only added to the tortured history of the case.

We now have, however unintended, a significant difference in the treatment of death penalty cases before this Court where the findings have been affirmed and the sentence of death has been set aside. *Compare United States v. Curtis, supra, with United States v. Simoy,* 50 MJ 1, 3 (1998), and *United States v. Thomas,* 46 MJ 311, 316 (1997).

The majority's action was unwise because it tied the hands of the Judge Advocate General by directing him to remand this case to the Court of Criminal Appeals. In so doing, the majority (1) bypassed the normal comprehensive process by which to determine whether to impose the mandatory life sentence or order a rehearing on sentence, and (2) assured that there would only be a limited review of the sentencing considerations. The unintended consequence of the majority's limiting treatment of this case is to leave us with a tainted outcome. This action seriously undermines public confidence in the result reached in this case and in our judicial system as a whole. But, as noted by the majority, "Neither the Government's petition for reconsideration nor the certificate for review questioned the wisdom or propriety of vesting the decision whether to order a sentence rehearing in the Court of Criminal Appeals instead of the Judge Advocate General." 52 MJ at 167.

When contrasting the role of the Court of Criminal Appeals in determining whether to impose a mandatory life sentence or order a rehearing on sentence with the roles of the Judge Advocate General and a convening authority in this process, it is readily apparent that the majority restricted the scope of consideration that could be given to this decision. Following this Court's reversal of appellant's sentence, the Judge Advocate General should have been allowed to fulfill his role of making an informed decision whether to send this case to the Court of Criminal Appeals or to a convening authority. The first step in the process is to decide how to direct the case. The Judge Advocate General stands at the fork in the road and, contrary to this Court or the court below, is in the best position to decide which path—that leading to the Court of Criminal Appeals or to a convening authority—to follow.

In deciding how to direct a case such as this, the Judge Advocate General has many resources available that are not available either to the court below or this Court. The Judge Advocate General can use these resources to review a wide variety of factors. These factors may include newly discovered evidence, post-trial developments such as clarification of the evidentiary and procedural rules, new scientific procedures, availability of witnesses, victim-impact considerations, and the philosophy or purpose behind sentencing. The Court of Criminal Appeals, on the other hand, is limited to the record of trial and cannot fully consider all of the factors available to the Judge Advocate General.

Following this review, the Judge Advocate General may decide that the record of trial is sufficient for any sentencing decision and, in the interests of judicial economy or for other reasons, send a case to the Court of Criminal Appeals for a decision to impose a mandatory life sentence or order a sentence rehearing. But in so directing the case to the Court of Criminal Appeals, the Judge Advocate General has had the benefit of an unrestricted and comprehensive review that cannot be conducted by either the Court of Criminal Appeals or this Court.

In the alternative, and I submit in the vast majority of cases such as this, the Judge Advocate General may decide to send the case to a convening authority to conduct an additional, unrestricted and comprehensive review in determining whether to impose a mandatory life sentence or order a rehearing on sentence. In so directing the case, the Judge Advocate General has the flexibility to

consider factors such as availability and location of witnesses in deciding which convening authority should review the case. By directing the Judge Advocate General to remand this case to the Court of Criminal Appeals, the majority usurped the role of the Judge Advocate General in deciding how to direct the case and limited the scope of factors that could be considered.

Following direction of the case down either path of the road, the second step in the process is the decision whether to impose a mandatory life sentence or order a rehearing on sentence. In this step, the old cliché is true: Courts are limited to what is in the record of trial. But litigation, that is, good litigation, requires a planning process. In this instance, it means that the Judge Advocate General should have had the option of directing the case to a convening authority who could (1) look at all the evidence, not only in light of the RCM 1000 series of rules, Manual for Courts–Martial, United States (1998 ed.), but also in light of the rules of evidence, since they apply during sentencing, and (2) decide which evidence was admissible and inadmissible. It may very well be that some evidence admitted at the first trial would not be admitted on resentencing. Likewise, there may have been evidence that was intentionally withheld at the first trial that might be admitted at resentencing. New scientific procedures such as the admissibility of DNA evidence could be important to explain what happened at the crime scene. Neither this Court nor the Court of Criminal Appeals can consider these factors outside of the record.

Additionally, since appellant's first trial, there have been numerous clarifications, *see, e.g., Simoy,* 50 MJ 1, setting forth in more detail the procedural rules needed to assist court members in avoiding the arbitrary imposition of the death penalty, as well as rules clarifying what might be admitted in extenuation, mitigation, and aggravation. *See, e.g., Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), *overruling South Carolina v. Gathers,* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), and *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

Not only will the convening authority review the evidence that might be presented on resentencing, but also he or she would be in a position to know whether resentencing would serve the philosophical goals of sentencing. There are five principal reasons for sentencing those who violate the law:

> They are rehabilitation of the wrongdoer, punishment of the wrongdoer, protection of society from the wrongdoer, preservation of good order and discipline in the military, and deterrence of the wrongdoer and those who know of his/her crime(s) and his/her sentence from committing the same or similar offenses.

Military Judges' Benchbook at 64 (Dept. of the Army Pamphlet 27–9 (30 Sept. 1996)). RCM 1001(g) provides, in part, that in closing argument, the prosecutor "may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution."

The convening authority would be mindful that the impact of specific and general deterrence should depend on a sentence by court members, rather than an intermediate appellate court. Furthermore, a convening authority would certainly take into consideration that it is the court members who are in the best position to determine rehabilitation.

While this Court and the court below may not consider affidavits from the victims' families and the families' communities, the Judge Advocate General and the convening authority may consider these in determining who would likely testify at a rehearing. Just as the defendant is entitled to have individualized consideration of his evidence, the impact on the victims' families should also be considered.

In addition to the changes in the rules concerning extenuation, mitigation, and aggravation, the convening authority, unlike the court below, may negotiate a post-trial agreement with the defendant. For example, a defendant convicted in a capital case could offer to accept a life sentence without the possibility of parole in lieu of a sentence

rehearing. There is no such opportunity for a defendant to bargain with the court below.

The curious question here is why did the majority shortcut the process in this case [1] and limit the considerations that could have gone into a decision whether to impose a mandatory life sentence or order a sentence rehearing? While the majority's action may have been within its legal authority, it is most unwise and should be avoided in the future. Furthermore, no one should assume that a rehearing on sentence would be the automatic result of the more comprehensive review process. Certainly, experience in the military justice system may show us that in similarly situated capital cases, a Judge Advocate General and a convening authority can conduct their respective comprehensive reviews and the result is a decision by the convening authority to impose the mandatory life sentence. *See Thomas*, 46 MJ at 316; *Simoy*, 50 MJ at 3. I would submit that the sentencing decision in both of those cases instills far greater public confidence in their outcome and in the military justice system than what we have in this case.

---

1. *See also United States v. Murphy*, 50 MJ 4 (1998), where the Court ordered a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), to determine whether appellant could form the requisite premeditation required for premeditated murder. While *Murphy* is in a different posture, this Court stated, if after the *DuBay* hearing, the Court of Criminal Appeals "determines that a different verdict would not reasonably result as to findings," then the Court "may either affirm appellant's sentence only as to life imprisonment and accessory penalties, or it may order a rehearing as to the death sentence." *Id.* at 16. Rather than trying to limit the consideration of the sentence in *Murphy* as it did in this case, this Court should on its own amend its decretal paragraph in *Murphy* to allow a full review process to take place.