Judge STUCKY,
dissenting.
In the specification at issue in this case, the prosecution alleged that Appellant made a false official statement to a member of the Coast Guai’d Investigative Service (CGIS): “that he was not involved in his wife’s business venture related to the production of marijuana, or words to that effect.” I disagree with the majority’s conclusion that the CGIS agents were required to advise Appellant of his Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012), rights before questioning him about his wife’s marijuana business. Therefore, I respectfully dissent.
,Law enforcement agents must advise a suspect of his rights “ ‘if the person conducting the questioning is participating in an official law enforcement or disciplinary investigation or inquiry.’ ” United States v. Jones, 73 M.J. 357, 361 (C.A.A.F. 2014) (quoting United States v. Swift, 53 M.J. 439, 446 (C.A.A.F. 2000)). This is a question of law we review de novo. Id. In doing so, we assess “all the facts and circumstances at the time of the interview to determine whether the military questioner was acting or could reasonably be considered to be acting in an official law-enforcement or disciplinary capacity.” Id. (internal quotation marks omitted) (citation omitted).
In this case, the CGIS agents were informed by an officer in Appellant’s chain of command “that there was a credible threat against [Appellant] at home and to the base,” and that “the threat is over a civil dispute between the member’s wife’s marijuana, recreational marijuana growing business.” When Appellant told Agent Stinson that “his wife’s"... business partner or previous business partner had made threatening statements towards him and his wife,” that the business partner, Mr. Hart, “had threatened to go to [Appellant’s] command,” that “Mr. Hart had anger issues, that [Appellant] believed [Mr. Hart] committed crimes in the past,” and that he was “a bully.”
Agent Stinson’s “primary concern ... was ... to figure out what the threat truly was and then to mitigate that threat.” He did not think he asked Appellant about his involvement in the business. “I think he told us that it was his wife’s business and he was not involved.” It was only his use of the terms “we” and “ours” when talking about his wife’s business that led him to believe Appellant might be a suspect.[1]
*380 During the interview, Appellant provided the agents with contact information for Mr. Hart and was able to identify him from photos that Agent Stinson was able to obtain from a Department of Motor Vehicle database. Agent Stinson did not advise Appellant of his Article 31(b) rights because they “were not asking incriminating questions.” The agents asked about the business to determine who was involved and from whom the threat was coming, Although the agents recognized the potential for their questions to elicit incriminating responses, they were focused on the threat—“to fully identify the threat and be able to find and mitigate that threat.” The military judge found as a fact, that “[t]he agents asked no specific questions about [Appellant’s] involvement with the marijuana grow [sic] business,” and that Appellant volunteered that information. The majority concedes as much. United States v. Ramos, 76 M.J. 131 (C.A.A.F. 2017).
The agents paused the interview with Appellant to discuss among themselves the way forward and to determine if they needed to advise Appellant of his Article 31(b) rights. At that time, Mr. Hart telephoned CGIS and agreed to talk to the agents. The agents terminated the interview with Appellant without asking him any further questions, but they did provide Appellant with information concerning force protection before he left the CGIS office.
In the past, this Court has recognized exceptions to the requirements of Article 31(b). See, e.g., United States v. Bradley, 51 M.J. 437, 441 (C.A.A.F. 1999); United States v. Moses, 46 M.J. 132, 136 (C.A.A.F. 1996); United States v. Loukas, 29 M.J. 385, 389 (C.M.A. 1990). This case is similar to Bradley. There, a commander asked the appellant, who had been accused of rape, whether he had been charged with an offense in order to determine whether his security clearance should be revoked. 61 M.J. at 439, When the appellant said he had not talked to law enforcement authorities, we held that although the appellant’s commander “was acting in an official capacity, he was seeking information needed for the proper review of appellant’s security cleai’ance status and was not conducting a criminal investigation.” Id. at 442. Therefore, Bradley’s unwarned statement was admissible. Id.
Here, the case for applying the exception is more compelling. “The mission of the U.S. Coast Guard Investigative Service is to support and protect U.S. Coast Guard personnel, operations, integrity and assets worldwide. We prevent and defeat criminal threats through objective and independent investigations.” United States Coast Guard, Coast Guard Investigative Service, https://www. useg.mil/hq/cg2/cgis/ (last visited July 13, 2017). Under all of the facts and circumstances of this case, the CGIS agents were acting in a force-protection mode. They were trying to discover the extent of the business partnership to determine who, if anyone, represented a credible threat to Appellant, his wife, the Coast Guard installation, and its personnel. There is no evidence that the CGIS agents were using the questioning as a ruse to avoid advising Appellant of his Article 31(b) rights. In fact, they came to a point where they interrupted the interview to determine if it was then necessary to advise Appellant of his rights. I conclude that the military judge did not err in ruling that the CGIS interview with Appellant was not done for a law enforcement or disciplinary purpose and, therefore, Appellant’s false statement was admissible.

. A suspect is a person whom law enforcement agents reasonably believe committed a criminal offense. See United States v. Meeks, 41 M.J. 150, 161 (C.M.A. 1994). “The fact that there is 'a hunch' that a crime has been committed does not trigger Article 31(b).” Id. This seems more like a hunch than a reasonable belief, but I recognize *380 that the military judge's finding that Appellant was a suspect is not clearly erroneous.