UNITED STATES

v.

Joseph L. THOMAS, Sergeant
(E–5), U.S. Marine Corps.

NMCCA 8901289.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 8 July 1998.

Decided 25 June 2004.

LtCol Eric Stone, USMC, Appellate Defense Counsel.

LT Christopher Burris, JAGC, USNR, Appellate Government Counsel.

Before the Court *En Banc*.

HARRIS, Judge:

During August through November 1988, a general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of the brutal premeditated murder of his wife, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. On 8 November 1988, the members sentenced the appellant to death. On 22 March 1989, the convening authority approved the sentence as adjudged.

A predecessor panel of this court issued three decisions on petitions for extraordinary relief or interlocutory motions made by the appellant. *See United States v. Thomas,* 33 M.J. 644 (N.M.C.M.R.1991), 33 M.J. 768 (N.M.C.M.R.1991), and 39 M.J. 626 (N.M.C.M.R.1993). On 23 June 1995, this court affirmed the findings and the sentence, after having set aside one of the two aggravating factors. *See United States v. Thomas,* 43 M.J. 550 (N.M.Ct.Crim.App.1995)(*en banc*)(affirming the aggravating factor that the murder was committed for the purpose of receiving money or anything of value; and, setting aside the aggravating factor that the murder was preceded by the intentional infliction of substantial physical harm or prolonged, substantial mental or physical pain and suffering to the victim). On 24 July 1997, the United States Court of Appeals for the Armed Forces affirmed the decision of this court as to the findings, but reversed as to the sentence. *See United States v. Thomas,* 46 M.J. 311 (C.A.A.F.1997).

On 8 July 1998, following a rehearing as to the sentence, before a military judge, sitting alone, the appellant was sentenced to confinement for life and a dishonorable discharge. On 25 June 1999, the convening authority approved the adjudged sentence and, except for the dishonorable discharge, ordered the punishment executed. A presentencing agreement precluded the appellant from again being sentenced to death.

The record of trial having been returned to this court, we again have carefully reviewed the record, the appellant's eight assignments of error and single supplemental assignment of error, and the Government's answer. We conclude that the sentence is correct in law and fact and, except as addressed below, that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Sentencing Rehearing

The appellant, during negotiations concerning a presentencing agreement with the convening authority, was at all times subject to the possibility that he could again be sentenced to death. As a result, to avoid his exposure to being sentenced to death for the second time, the appellant waived numerous rights in his presentencing agreement. Appellate Exhibit XVIII.[1]

First, the appellant agreed to be sentenced by a military judge, sitting alone. *Id.* at

---

1. The complete presentencing agreement is attached as an Appendix to this opinion.

¶ 5(a). Second, the appellant agreed to waive his right to be considered for clemency by the Naval Clemency and Parole Board. *Id.* at ¶ 5(b). Third, the appellant agreed to permanently waive his annual mandatory clemency review by the Naval Clemency and Parole Board. *Id.* Fourth, the appellant agreed to never request clemency. *Id.* Fifth, the appellant agreed to *never accept clemency* even if it was offered to him. *Id.* Sixth, the appellant agreed to waive his right to ever be considered for or given parole by the Naval Clemency and Parole Board. *Id.* at ¶ 5(c). Seventh, the appellant agreed to *never accept parole* even if it were offered to him. *Id.* Eighth, the appellant agreed that if it was ever determined that an annual waiver of his right to be considered for parole was necessary to enforce his agreement to never be considered for parole, then his presentencing agreement would serve as the required annual waiver. *Id.* Ninth, the appellant waived his right to obtain the services of a mitigation expert. *Id.* at ¶ 5(d). Tenth, the appellant waived his right to the services of any other expert to consult with or testify at the sentencing rehearing. *Id.* Eleventh, the appellant agreed to waive his right to "obtain the personal appearance" of any other witness to testify at his sentencing rehearing. *Id.* Twelfth, the appellant agreed that should the presentencing agreement become null and void, "the parties will be deemed to have returned to the positions that they were in before this agreement." *Id.* at ¶ 8. Thirteenth, in the event that the presentencing agreement became null and void, the appellant agreed to waive any rights under the UCMJ or RULES FOR COURTS-MARTIAL, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), against referring the Charge to another sentencing rehearing where death would be an authorized sentence. *Id.* Fourteenth, the appellant agreed that if any provision of the agreement was found to be invalid or unenforceable, the remaining provisions would remain in full force. *Id.* at ¶ 9.

In return, the convening authority agreed to the non-capital referral of the appellant's case at this sentencing rehearing and to designating the place of confinement as the United States Disciplinary Barracks at Fort Leavenworth, Kansas. *Id.* at ¶¶ 6(a) and (b). This provision also carried the express understanding that the convening authority could not guarantee that the appellant would actually be confined at the Disciplinary Barracks. *Id.*

Subsequent to the appellant's sentencing rehearing, he submitted post-trial matters to the convening authority pursuant to R.C.M. 1105. Post–Trial Matters of 14 May (sic) 1999. As part of these post-trial matters, the appellant, contrary to the presentencing agreement, requested that the convening authority "exercise [his] discretion and allow the Naval Clemency and Parole Board to consider [the appellant's] case in the normal course and pursuant to applicable instructions." *Id.* at ¶ 2. Further, despite having elected not to present any evidence in extenuation and mitigation on sentencing (Rehearing Record at 52), the appellant presented three letters from family members "eager to provide [the appellant] with support and to assist him in reentering civilian life." *Id.* at ¶ 3 (Enclosures (1)–(3)). Two of the three family members also attested to "some of the steps [the appellant] has taken while in confinement [over the past 10 years] to rehabilitate himself." *Id.* at ¶ 4 (Enclosures (1) and (2)). The appellant also presented a letter from the Director of Treatment Programs at the United States Disciplinary Barracks, "confirm[ing] [the appellant's] rehabilitative efforts and his motivation in that regard." *Id.* at ¶ 5 (Enclosure (4)). Finally, the appellant compared his case with another premeditated (double) murder case in which that appellant is now only serving a sentence to confinement for life with eligibility for parole.[2] *Id.* at ¶¶ 6–9, 11, and 14.

### Presentencing Agreement Violates Public Policy

While pretrial agreements are considered beneficial and acceptable components of military justice practice, if left unchecked, various provisions therein might well undermine the military justice system and render a particular court-martial an empty ritual. *United States v. Cummings*, 38 C.M.R. 174, 177, 1968 WL 5361 (C.M.A.1969)(citing *United*

2. *See United States v. Curtis*, 52 M.J. 166 (C.A.A.F.1999).

States v. Allen, 25 C.M.R. 8, 1957 WL 4636 (C.M.A.1957)). Even though it is clear that the military justice system may place some limits on the provisions permitted to be included in a valid pretrial agreement, it is recognized that the extent of those limits is not well-defined. *United States v. Libecap,* 57 M.J. 611, 614 (C.G.Ct.Crim.App.2002). Further, it is well-settled that if the parties "intended to accomplish some end either prohibited by the [UCMJ] or achieved by a means unauthorized or inconsistent with military law, this provision cannot be considered lawful." *United States v. Dawson,* 10 M.J. 142, 146 (C.M.A.1981)(citing *Runkle v. United States,* 122 U.S. 543, 556, 22 Ct.Cl. 487, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887)).

■ In the appellant's first assignment of error, he asserts that the parties in his case attempted to accomplish a sentence to confinement for life "without eligibility for parole" when such a *de facto* punishment was neither authorized nor provided for in the Manual for Courts–Martial (MCM). The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We disagree.

On 10 December 1987, the day the appellant brutally murdered his wife, life "without eligibility for parole" was not an authorized punishment under the UCMJ. Thus, on 8 July 1998, the day the appellant was resentenced, the military judge sentenced him, in part, to be confined for "life." Rehearing Record at 54. Even though life "without eligibility for parole" was an authorized punishment under the UCMJ on the date of the appellant's sentencing rehearing, life "without eligibility for parole" could not be applied *ex post facto* to his sentencing rehearing, nor did the military judge ever consider life "without eligibility for parole". Rehearing Record at 37–38.

Congress created the punishment of life "without eligibility for parole" in 1997 through its enactment of Article 56a, UCMJ, 10 U.S.C. § 856a, mandating that "[f]or any offense for which a sentence of confinement for life may be adjudged, a court-martial may adjudge a sentence of confinement for life without eligibility for parole." Art. 56a, UCMJ (emphasis added). The President of the United States later amended the MCM to implement Article 56a, UCMJ. Exec. Order No. 13,262, Fed.Reg. 18,773 (Apr. 11, 2002)(titled "2002 Amendments to the Manual for Courts–Martial, United States"). Section 6 provides that "[t]hese amendments shall take effect on May 15, 2002." *Id.* at 18,779. In addition, Section 6 provides, "[t]he amendments made to Rules for Courts–Martial 1003(b)(7), 1004(e), 1006(d)(4)(B), and 1009(e)(3)(B)(ii) shall only apply to offenses committed after November 18, 1997." *Id.*

Thus, the appellant opines that "the parties, through the presentencing agreement, have attempted to accomplish, implement, and otherwise bring into effect a punishment [neither] authorized by the [MCM nor imposed] by the military judge in [his] case." Appellant's Brief of 31 Jan 2003 at 10–11. Accordingly, citing *United States v. Cassity,* 36 M.J. 759, 762 (N.M.C.M.R.1992), the appellant asserts that the presentencing agreement is void as a violation of public policy, the UCMJ, and fundamental fairness, and must be set aside. Appellant's Brief of 31 Jan 2003 at 11. As it applies to the first assignment of error, we disagree with that assertion.

As stated in the Government's brief, subject to certain limitations, an accused service member and the convening authority are free to negotiate and enter into a pretrial agreement in order to avoid a contested court-martial. R.C.M. 705; *see Cassity,* 36 M.J. at 760–63. An accused may agree with the convening authority to waive certain delineated rights beyond his right to plead not guilty and to perform other actions as part of the agreement. R.C.M. 705(b) and (c). When determining the enforceability of the terms of a pretrial agreement "[c]riminal defendants may knowingly and voluntarily waive many rights and Constitutional protections." *United States v. Edwards,* 58 M.J. 49, 52 (C.A.A.F.2003). Such terms or conditions will, however, not be enforced if they violate either appellate case law or public policy. *Id.* at 51–52. Under such circumstances, the accused will be prohibited from

waiving the underlying right or privilege affected by the particular term or condition. *Id.* at 52.

Therefore, when a particular pretrial agreement provision is challenged based upon an alleged violation of public policy, we first determine whether there is waiver. *Id.* The Supreme Court of the United States has made clear that explicit waivers of statutory or Constitutional rights by an accused are presumed to be valid. *United States v. Mezzanatto,* 513 U.S. 196, 200–01, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995). At the foundation of the Supreme Court's analysis is the well-settled principle that the legal system should encourage plea bargains. *See Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Accordingly, it is within this context that we analyze the appellant's assertions.

The explicit nature of the appellant's bargained for *quid pro quo* was clearly delineated in his presentencing agreement, which stated, "[t]he purposes of this agreement are to benefit me by *eliminating the death penalty* as an authorized punishment, and to benefit the government by streamlining the resentencing procedure and addressing concerns regarding my eligibility for clemency and parole." Appellate Exhibit XVIII at ¶ 4 (emphasis added). Further, during his inquiry the military judge carefully reviewed the conditions of the presentencing agreement. Rehearing Record at 39–51.

The appellant now, on appeal, contends that the provisions in his presentencing agreement, which he proposed and bargained for, requiring him to forfeit his parole and clemency opportunities violate public policy, because life "without eligibility for parole" was not a punishment authorized under the UCMJ at the time of his crime. Appellant's Brief of 31 Jan 2003 at 6–7. This argument is inextricably linked to another of the appellant's arguments that the presentencing agreement impermissibly focused on the "collateral consequences" of parole and clemency, and impermissibly allowed the convening authority to, in effect, impose a sentence greater than that adjudged by the court-martial. Appellant's Brief of 31 Jan 2003 at 9–11, 23–25, 26–27.

The appellant's brief both explicitly and implicitly alleges "over-reaching" on the part of the convening authority's staff judge advocate (SJA). Guided by our superior court, we give little consideration to an appellant who has put forward a pretrial agreement (presentencing) provision and then, following its acceptance by the convening authority, on appeal, attempts to "cry foul" about its effects, as far reaching as they might, at first, appear to be. *See United States v. Jones,* 23 M.J. 305, 308 (C.M.A.1987); *see also Brady v. United States,* 397 U.S. 742, 750–51, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The focal point of the appellant's public policy argument is the assertion that his knowing and voluntary waiver of his parole and clemency opportunities, in effect, constitutes an "unauthorized punishment" under the UCMJ. Appellant's Brief of 31 Jan 2003 at 7, 9. The appellant reasons that by falling outside the UCMJ, this so-called "unauthorized punishment" must violate public policy. We do not agree.

First, military service Courts of Criminal Appeals routinely permit pretrial agreement provisions that go beyond the UCMJ and create detriments to the appellant that are collateral to the adjudged sentence. Second, the enactment of Article 56a, UCMJ, prior to the appellant's sentencing rehearing, clearly indicate that the provisions in his presentencing agreement, except as addressed below, do not violate the public policy established by Congress and signed into law by the President.

We conclude that not all pretrial agreement provisions that create detriments for an accused that are collateral to his adjudged sentence and stand apart from the UCMJ, would necessarily violate public policy. *See United States v. Nicholson,* 13 M.J. 928, 929–30 (N.M.C.M.R.1982)(demonstrating that the availability of parole is a valid subject for negotiation in a pretrial agreement), *aff'd,* 15 M.J. 436 (C.M.A.1983). Further, this court has generally held that collateral terms that are detrimental to an accused can survive appellate scrutiny. *United States v. Callahan,* 8 M.J. 804, 805–06 (N.M.C.M.R.1980)(holding that a convening

authority and an accused could agree to restitution in a pretrial agreement, even though restitution is not specifically sanctioned under the UCMJ, because it furthered acceptable public policy goals). This court has held that "a pretrial agreement should not be held void simply because it concerns matters other than the sentence and the charges." *Id.* at 805. As a final point, we conclude that by allowing the appellant the right to bargain away the rights to request clemency and parole in exchange for his life, in lieu of the possible imposition of the harshest of lawful punishments—death—does not violate public policy or this court's notions of fundamental fairness, where Congress has specifically mandated life "without eligibility for parole" as an appropriate punishment for the very offense the appellant committed. *See generally United States v. Gansemer*, 38 M.J. 340, 342 (C.M.A.1993). Accordingly, we decline to grant relief.

█ In the appellant's second assignment of error, he asserts that "booby-trapping" presentencing agreements with threats of later capital punishment to prevent service members from exercising their post-trial and appellate rights is a violation of public policy, in that R.C.M. 705(c)(1)(B) provides that an agreement shall not be enforced if it deprives the accused of the "complete and effective exercise of post-trial and appellate rights." The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We disagree.

The Rules for Courts–Martial provide more than sufficient guidance as to enforceability of specific terms in a pretrial agreement:

A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete sentencing proceedings; the complete and effective exercise of post-trial and appellate rights.

R.C.M. 705(c)(1)(B). Further, "[a] term or condition in a pretrial agreement shall not be

enforced if the accused did not freely and voluntarily agree to it." R.C.M. 705(c)(1)(A).

In his presentencing agreement, the appellant agreed that if the agreement becomes null and void he "*waives* all sentence limitations that he may be entitled to under Article 63, UCMJ, or [R.C.M.] 810." Appellant's Brief of 31 Jan 2003 at 12 (emphasis added). The appellant argues that such an agreement is a violation of public policy, "because it effectively forecloses all appellate litigation of the presentencing agreement by threatening the accused with possible execution should he win the appeal." *Id.* Thus, in the appellant's opinion, he is denied his full right to appeal his conviction under R.C.M. 705(c)(1)(B), because he is intimidated by the prospect of having his "life sentence" changed to a "death sentence." *Id.* at 13.

Article 63, UCMJ, provides:

Each *rehearing* under this chapter shall take place before a court-martial composed of members not members of the court-martial [that] first heard the case. Upon a *rehearing* the accused may not be tried for any offense of which he was found not guilty by the first court-martial, and *no sentence in excess of or more severe than the original sentence may be approved*, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory. If the sentence approved after the first court-martial was in accordance with a pretrial agreement and the accused at the *rehearing* changes his plea with respect to the charges or specifications upon which the pretrial agreement was based, or otherwise *does not comply with the pretrial agreement*, the approved sentence as to those charges or specifications may include any punishment not in excess of that lawfully adjudged at the first court-martial.

(Emphasis added). As previously addressed, at the appellant's first court-martial he was sentenced to "death." *Thomas*, 39 M.J. at 626.

After carefully conducting our review of the presentencing agreement and the record,

we conclude that the intent of both the appellant and the convening authority was to allow the Government to lawfully seek the death penalty at a future sentencing rehearing, if the appellant failed to honor the terms of the presentencing agreement at the current sentencing rehearing, or if the presentencing agreement otherwise became null and void. Appellate Exhibit XVIII at ¶ 8; Rehearing Record at 47–48; *see North Carolina v. Pearce,* 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)(demonstrating that absent some evidence of "vindictiveness" on the part of the sentencing authority, there is no constitutional or policy concern with an accused receiving a harsher sentence at a *retrial* or *rehearing on sentence*). Whether the appellant failed to honor the terms of the presentencing agreement at his current sentencing rehearing, or whether the presentencing agreement otherwise became null and void requires judicial determination subject to complete appellate review.

We further conclude that the appellant, in accord with the above specific understanding, explicitly and affirmatively waived his rights under Article 63, UCMJ, 10 U.S.C. § 863, to limit his sentence at a future sentencing rehearing, if it were judicially determined that he failed to honor the approved conditions of his presentencing agreement, or if the presentencing agreement otherwise became null and void by judicial determination. *Id.* We also conclude that the provisions of the appellant's presentencing agreement, as approved by this court, do not impermissibly interfere with the appellant's exercise of complete and full appellate review at any level.

Performance by the convening authority was complete when he approved the appellant's sentence. Once a military service Court of Criminal Appeals affirms an appellant's court-martial (sentencing rehearing), the convening authority effectively lacks the authority to order another sentencing rehearing where the Government could seek a harsher punishment—here, the death penalty—unless the Court of Appeals for the Armed Forces overturns the military service Court of Criminal Appeals decision and, on remand, authorizes a capital rehearing. In light of the aforementioned, we conclude that the appellant's exercise of his right to appeal the provisions of his presentencing agreement have not been impermissibly interfered with by the possibility of the Government seeking the death penalty at any future sentencing rehearing. *See Chaffin v. Stynchcombe,* 412 U.S. 17, 32–33, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973)(citing *Crampton v. Ohio,* 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)). Further, we conclude that the military judge's imposition of a life sentence cannot be considered as an acquittal of the appellant of the aggravating factor previously approved by this court. *Thomas,* 43 M.J. at 561. Accordingly, we decline to grant relief.

In the appellant's third assignment of error, he asserts that the presentencing agreement—which requires him to: (1) forgo review of his case for clemency purposes; (2) not request review of his case for clemency; and, (3) not accept clemency if it is ever offered to him—is unenforceable, over-reaching, and undermines public confidence in the integrity and fairness of the disciplinary process, and should be set aside. The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We agree only that the portion of the appellant's presentencing agreement requiring him to not accept clemency even if it is offered to him is unenforceable. We do not agree that, as a result of the appellant's presentencing agreement being, in part, unenforceable, the entire agreement is void and should be set aside in its entirety.

■■■ As our superior court has previously held, and as this court has very recently followed, where a pretrial agreement—in the appellant's case, presentencing agreement—encompasses conditions that violate appellate case law, public policy, or notions of fundamental fairness, then those specific provisions must be stricken from the agreement by the military judge. *United States v. Green,* 1 M.J. 453, 456 (C.M.A.1976); *United States v. Sunzeri,* 59 M.J. 758, 760 (N.M.Ct. Crim.App.2004). In reviewing questions of whether a challenged provision violates ap-

pellate decisions or public policy, this court applies a *de novo* standard of review. *Sunzeri*, 59 M.J. at 760 (citing *Libecap*, 57 M.J. at 615). Further, this court reviews the military judge's determination of whether a provision violates his own notions of fundamental fairness under an abuse of discretion standard. *Id.* (citing *Cassity*, 36 M.J. at 762).

What pretrial agreement provisions violate appellate case law is determined by reference to precedent. *Cassity*, 36 M.J. at 761. However, determining which provisions of a pretrial agreement violate "public policy" is more problematic. *Id.* R.C.M. 705, which deals with pretrial agreements, is itself a statement of public policy. *Id.* In addition to pretrial agreement provisions that substitute the agreement for the trial—in effect rendering the trial an empty ritual—this court will disapprove those conditions that it believes are clearly misleading or abridge fundamental rights of the service member. *See Cummings*, 38 C.M.R. at 178. Despite the mutual assent of the parties to a particular pretrial agreement provision, the provision would be contrary to public policy if it would "interfere with court-martial fact-finding, sentencing, or review functions[,] or [would] undermine public confidence in the integrity and fairness of the disciplinary process." *Cassity*, 36 M.J. at 762.

Regarding that portion of the rule prohibiting military judges from accepting pretrial agreement provisions that violate notions of fundamental fairness, whether the provisions violate notions of fundamental fairness can often depend on their application in any given case. *Id.* It is clear that in order to be enforceable, the material conditions of the appellant's pre-sentencing agreement must be sufficiently definite or certain. *Dawson*, 10 M.J. at 150. After thorough review of the appellant's presentencing agreement, we conclude that the material conditions of the appellant's presentencing agreement are explicitly clear and definite.

▮ In exchange for the convening authority's agreement to not seek the death penalty, the appellant knowingly (at arms-length), and voluntarily chose to waive his opportunities for parole and clemency. Appellate Exhibit XVIII at ¶¶ 4, 5(b) and (c), and 6(a). Further, the exact implications of these terms were thoroughly discussed during the appellant's sentencing rehearing. Rehearing Record at 39–51. Nonetheless, we conclude that in those cases where a service member's conviction for an offense could carry a sentence of death and does carry a mandatory minimum sentence of confinement for life, any provision of a pretrial agreement that precludes the service member from accepting clemency were it ever offered to him, is unenforceable as a violation of public policy, because the convening authority would be usurping the service Secretary's authority and the President's authority to exercise their independent discretion in granting clemency. Further, in those cases where a service member's conviction for an offense could carry a sentence of death and does carry a mandatory minimum sentence of confinement for life, we do not find a violation of public policy where the service member has voluntarily agreed to waive review of his case for clemency and parole purposes and to never request review of his case for clemency and parole purposes. Still further, we conclude that these provisions do not require the prior explicit permission of the military service Secretary, absent statutory authority that a service member is entitled to parole consideration after a term of years, even if a sentence to life is adjudged, approved, and affirmed.

Having found that certain language in the appellant's presentencing agreement is violative of public policy, this court must now determine whether our conclusion nullifies the presentencing agreement as a whole, requiring us to set aside the sentencing rehearing. The parties agreed, in part, that should their presentencing "[a]greement become null and void, the parties will be deemed to have returned to the positions that they were in before this [a]greement." Appellate Exhibit XVIII at ¶ 8. However, the parties also agreed that "[i]n the event that any provision of this [a]greement is found to be invalid or unenforceable, the remaining provisions shall remain in full force and effect to the degree that they may be enforced consistent with the purposes of this [a]greement." *Id.* at ¶ 9.

As such, we interpret the parties' intent to plainly mean that the presentencing agreement should continue to remain in full force and effect, if at all possible, should provisions or certain language therein be deemed unenforceable. We see no reason to disregard that severability provision.

■ Accordingly, having found above that certain aforementioned language contained in the parties' presentencing agreement is violative of public policy, we further find that same language to be unenforceable. Specifically, in paragraph 5(b) of the presentencing agreement, the language and punctuation "and if offered clemency I agree to not accept clemency;", is unenforceable. *Id.* at ¶ 5(b). Further, in paragraph 5(c) of the presentencing agreement, the punctuation and language ", and if offered parole I agree to not accept parole", is unenforceable. Having found the preceding language and punctuation is violative of public policy and unenforceable, we review the remainder of the presentencing agreement for enforceability. Having previously reviewed the presentencing agreement for definiteness and certainty, we again review the remainder and find it to be definite, certain, and enforceable. Accordingly, no additional relief is warranted on these grounds.

■ In the appellant's fourth assignment of error, he asserts that the presentencing agreement requires him to waive his rights under Article 63, UCMJ, and R.C.M. 810, and is, therefore, repugnant to public policy, as these legal provisions are not rights of the appellant, but rather, sentence limitations set by the President of the United States. The appellant avers that this court should set aside the entire presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We disagree.

Article 56, UCMJ, 10 U.S.C. § 856, concerning maximum punishment limits, states that "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." As such, the power to set maximum punishments for violations of the punitive articles of the UCMJ is exercised by the President. Under Article 63, UCMJ,

Congress placed limitations on the President's authority to establish maximum punishments in courts-martial where a rehearing is authorized. In accordance with the limitations of Article 63, UCMJ, the President promulgated R.C.M. 810, which prescribes the maximum punishments available at courts-martial where a rehearing is authorized.

The appellant is correct in his argument that no language in Articles 56 or 63, UCMJ, or R.C.M. 810 explicitly authorizes or implicitly suggests that the convening authority may increase the maximum sentence set by Congress and the President for a rehearing. Appellant's Brief of 31 Jan 2003 at 18–19. However, neither the appellant nor the convening authority attempted to waive or otherwise ignore the limitations on maximum punishments on rehearing. The military judge bound the court-martial to the maximum punishment authorized by the President, as agreed to by the appellant and the convening authority in the presentencing agreement. Rehearing Record at 38. Further, the military judge did not impose a punishment greater than that authorized by the President, as agreed to in the presentencing agreement. *Id.* at 54. The fact that the appellant voluntarily chose to avoid the very real possibility of an adjudged sentence of death for the second time on sentencing rehearing, by agreeing to certain presentencing agreement provisions limiting his opportunity for consideration for clemency or parole—which we address above and below in our opinion—does not equate to waiver of the maximum punishment limitation set by the President at his sentencing rehearing. Accordingly, we decline to grant relief.

■ In the appellant's fifth assignment of error, he asserts that the presentencing agreement requires him to waive his rights to consideration for clemency and parole under Secretary of the Navy Instruction 5815.3H (5 Oct 1993), "Department of the Navy Clemency and Parole Systems" (since superceded by SECNAVINST 5815.3J of 12 Jun 2003)—but that the manner prescribed by the presentencing agreement for waiving his rights is in direct conflict with the re-

quirements of SECNAVINST 5815.3H. The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We disagree.

After Congress authorized each military service Secretary to provide a system of parole for offenders who are confined in military correctional facilities, *see* 10 U.S.C. §§ 952 and 953, the Secretary of Defense promulgated Department of Defense Instruction (DODINST) 1325.4 (19 May 1988), "Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities," requiring each military service Secretary to establish a Clemency and Parole Board to assist the Secretary in executing his statutory clemency and parole responsibilities. The Secretary of the Navy issued SECNAVINST 5815.3H to implement the clemency and parole provisions of DODINST 1325.4.

The argument put forward by the appellant is that the presentencing agreement's permanent waiver of clemency was not accomplished in accordance with SECNAVINST 5815.3H and, therefore, is a violation of public policy. Appellant's Brief of 31 Jan 2003 at 20–22. With regards to the appellant's public policy argument, he asserts that: (1) the presentencing agreement failed to follow the format and forwarding requirements of SECNAVINST 5815.3H; and (2) SECNAVINST 5815.3H contains no provision for a "permanent waiver" as accomplished in the presentencing agreement. Appellant's Brief of 31 Jan 2003 at 21.

Congress, in enacting 10 U.S.C. §§ 952 and 953, mandated that the military service Secretaries establish procedures to provide convicted service members with the opportunity for parole and clemency. *United States v. Wallace*, 58 M.J. 759, 765–66 (N.M.Ct. Crim.App.2003). In accordance with those statutes, the Secretary of the Navy promulgated SECNAVINST 5815.3H, establishing such procedures for the Navy and Marine Corps. The Secretary's instruction specifically takes into account the many ways in which a service member may affirmatively waive the opportunities it provides. SEC-NAVINST 5815.3H at ¶ 410.

Contrary to the appellant's form-over-substance assertions, it is the voluntary, knowing, and intelligent nature of the waiver, not its format, which dictates whether the waiver should be enforceable. As the appellant's colloquy with the military judge during the sentencing rehearing makes clear, there is no question that the appellant's waiver was voluntary, knowing, and intelligent, signed by the appellant and witnessed by his attorney. Rehearing Record at 39–51. Accordingly, we decline to grant relief.

■ In the appellant's sixth assignment of error, he asserts that since Congress has vested the Secretary of the Navy with the power to grant clemency and parole, the presentencing agreement in his case impermissibly usurps and otherwise interferes with the Secretary's delegated congressional authority and, therefore, is contrary to public policy. The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We do not agree, except as addressed above under the appellant's third assignment of error.

It is clear that Congress intended for each of the military service Secretaries to implement a clemency and parole system. 10 U.S.C. §§ 952 and 953. The Navy Secretary did this when he promulgated SECNAVINST 5815.3H. We find, nonetheless, that the appellant's presentencing agreement, which does not allow for the submission of a request for clemency or parole, does not impermissibly usurp or interfere with the Navy Secretary's delegated congressional authority, but rather falls within the waiver provisions of that implemented authority.

■ While it is clear that courts-martial are to concern themselves with the appropriateness of a particular sentence for an accused and his offense or offenses without regard to the collateral administrative effects which may or may not occur after the court-martial adjourns, *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A.1988), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2849, 101 L.Ed.2d 886

(1988), the administrative post-trial procedures that may permit the Secretary of a military service or his designee to release a prisoner on parole or to grant clemency are also collateral to the sentencing function at trial, and should not be considered in the appellant's case by the military judge, unless found to violate public policy. *United States v. McLaren*, 34 M.J. 926, 933–34 (A.F.C.M.R. 1992), *aff'd*, 38 M.J. 112 (C.M.A.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). We find that the presentencing agreement in the appellant's case, except as addressed above, does not impermissibly usurp or interfere with the Navy Secretary's delegated congressional authority. Accordingly, we decline to grant relief.

■ In the appellant's seventh assignment of error, he asserts that his presentencing agreement effectively allows the convening authority to impose a punishment greater than that adjudged by the court-martial, which is a violation of R.C.M. 1002 and Article 51(d), UCMJ, and is, therefore, contrary to public policy. The appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life. We disagree.

Article 51(d), UCMJ, 10 U.S.C. § 851(d), provides, in part, that in cases tried before a military judge, sitting alone, the military judge "shall determine all questions of law and fact arising during the proceedings and, if the accused is convicted, adjudge an appropriate sentence." Further, R.C.M. 1002 provides:

Subject to the limitations in this Manual, the sentence to be adjudged is a matter within the discretion of the court-martial; except when a mandatory minimum sentence is prescribed by the code, a court-martial may adjudge any punishment authorized in this Manual, including the maximum punishment or any lesser punishment, or may adjudge a sentence of no punishment.

The appellant elected to be re-sentenced by a military judge, sitting alone. Rehearing Record at 37. The military judge, after seeking concurrence from the individual military counsel (IMC) and the trial counsel, informed the appellant that regarding confinement, the minimum and the maximum sentence was "life imprisonment." *Id.* at 38. Accordingly, and without discretion in the matter, the military judge sentenced the appellant, in part, to be confined for "life." *Id.* at 54.

The appellant avers that the presentencing agreement presently has the effect of confining him for life "without eligibility for parole." Appellant's Brief of 31 Jan 2003 at 26. The appellant also opines that the result of the presentencing agreement is that a greater punishment than adjudged by the military judge is being meted out upon him. *Id.* Again, we do not agree. Based on our discussions above under the appellant's first six assignments of error, we do not find that the presentencing agreement results in a much greater punishment than that adjudged by the military judge being meted out upon him. Under our Constitution, it is well within the President's exercise of his Article II powers, if he so chooses, to override the appellant's presentencing agreement and to grant him clemency. *See Schick v. Reed*, 419 U.S. 256, 268, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974)(observing that the President can always provide relief from a *no-parole condition* to a federal prisoner (emphasis added)), *reh'g denied*, 420 U.S. 939, 95 S.Ct. 1150, 43 L.Ed.2d 416 (1975). Further, the President is within his discretionary power to place conditions on the clemency he elects to grant. *Id.* at 267, 95 S.Ct. 379 (holding that the President has the constitutional power to attach conditions to his commutation of any sentence). Accordingly, we decline to grant relief.

As to the appellant's assignments of error one through seven addressed above, the appellant avers that this court should set aside the presentencing agreement in his case and only affirm the adjudged sentence of a dishonorable discharge and confinement for life, as approved by the convening authority. We only agree that we can affirm a dishonorable discharge and confinement for life. This we shall do below in our decretal paragraph.

### Addendum to Staff Judge Advocate's Recommendation (SJAR)

In the appellant's eighth assignment of error, he asserts that the Addendum to the

SJAR: (1) grossly misinformed the convening authority as to the facts of his case; (2) was grossly, if not purposefully, misleading as to the actual availability of the punishment of life "without eligibility for parole;" and, (3) was not served upon trial defense counsel prior to the convening authority taking his action on the case. The appellant avers that this court should set aside the convening authority's action, return the record to the convening authority for service of the Addendum to the SJAR on the appellant, and for a new convening authority's action with instructions that the convening authority may not authorize a sentencing rehearing at which death is a possible punishment. We disagree that the convening authority's action must be set aside.

Before the convening authority takes his action on a particular service member's case, R.C.M. 1106 first requires the SJA to submit a recommendation to the convening authority concerning that particular service member's conviction and sentence. R.C.M. 1106(d). The express purpose of this recommendation is "to assist the convening authority in deciding what action to take on the sentence in the exercise of command prerogative." *Id.*

As acknowledged by the appellant in his brief, both this court and our superior court have recognized the significance of the SJAR in the court-martial process. *United States v. Finster*, 51 M.J. 185, 187 (C.A.A.F.1999); *United States v. Cunningham*, 44 M.J. 758, 763 (N.M.Ct.Crim.App.1996). The SJAR's importance stems from its influence on the unique and awesome power available to the convening authority when acting on a sentence. *Finster*, 51 M.J. at 186–87. The SJAR is much more than a ministerial action or mechanical recitation of facts concerning the trial. The "[c]omplete and accurate advice [in the SJAR] provides the convening authority with the guidance necessary to carry out the responsibilities Article 60(d), UCMJ, imposes." *Id.* at 187 (citing *Cunningham*, 44 M.J. at 763). This is why an error in the SJAR may warrant relief. *See United States v. Lee*, 50 M.J. 296, 298 (C.A.A.F.1999).

■ To obtain relief based on an error in the SJAR, however, an appellant must: (1)

allege the error with the military service Court of Criminal Appeals; (2) allege prejudice resulting from the error; and, (3) show what he would do to resolve the error if given the opportunity. *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F.1998). Given the highly discretionary and executive nature of the convening authority's action, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *Id.* at 289. When an appellant accomplishes this, the particular military service Court of Criminal Appeals must "either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new post-trial recommendation and action." *Id.*

■ R.C.M. 1106(f)(7) authorizes the SJA to supplement his recommendation after receiving comments from the trial defense counsel in response to the original SJAR. The rule further provides that when any new matter is addressed in the Addendum, the trial defense counsel "must be served with the new matter and given 10 days from service of the [A]ddendum in which to submit comments." *Id.* In determining what would be considered new matter, the Discussion to R.C.M. 1106(f)(5) recognizes:

"New matter" includes discussion of the effect of new decisions on issues in the case, matter from outside the record of trial, and issues not previously discussed. "New matter" does not ordinarily include any discussion by the [SJA] of the correctness of the initial defense comments on the recommendation.

Absent plain error, failure to comment on such new matter after being served waives any later claim of possible error. R.C.M. 1106(f)(6). However, if an Addendum contains new matter not served on the appellant, to demonstrate prejudice and obtain relief, an appellant must articulate "what, if anything, would have been submitted to 'deny, counter, or explain' the new matter." *United States v. Chatman*, 46 M.J. 321, 323–24 (C.A.A.F.1997)(citing Article 59(a), UCMJ).

In the appellant's case, he argues that the Addendum to the SJAR contained prejudicial new matter not served on the appellant. See Appellant's Brief of 31 Jan 2003 at 28–36. To reach the appellant's argument concerning new matter in the Addendum, we must first address the content of the SJAR and the appellant's responses thereto. In his SJAR, the SJA incorporated the appellant's case history, in part, into the paragraph delineating the appellant's adjudged sentence. SJAR of 10 Mar 1999 at ¶ 2. In his response, brought in accordance with R.C.M. 1106, the appellant's IMC conveyed to the convening authority: (1) his concerns with the SJA's reference to the aggravating factors from the original sentencing hearing and the imposition of a sentence to death; (2) his perception that the SJA's recitation of the history of the appellant's case is somewhat incomplete and misleading; and, (3) his fears that the inclusion of this information in the SJAR has biased the appellant's chance of the convening authority taking clemency action in his case. IMC's SJAR Response of 14 May (sic) 1999. The IMC opines: (1) that there should have been no mention of R.C.M. 1104 aggravating factors in the SJAR; (2) that inclusion of these matters in the SJAR have prejudiced the appellant's best chance for clemency; (3) that the SJAR should be sanitized, thereby redacting reference to the alleged aggravating factors and the appellant's original sentence to death; and, (4) that the convening authority should act under R.C.M. 1107(a) by forwarding his case to another officer exercising general court-martial jurisdiction who has not been exposed to the aforementioned information contained in the SJAR of 10 March 1999. Id.

In his Addendum to the SJAR, the SJA responded to the IMC's 14 May (sic) 1999 response to the SJAR and to the post-trial matters submitted in accordance with R.C.M. 1105 by the appellant on 14 May (sic) 1999. SJAR Addendum of 26 Apr 1999. The SJA both wisely and correctly informed the convening authority that "[y]ou *must* consider these matters as set forth in the enclosures prior to taking your action." Id. at ¶ 1 (emphasis added). Nothing was presented by the appellant in his brief that indicates that the convening authority did not, in fact, follow the SJA's very specific guidance on this matter. Further, the SJA responded to the IMC's concerns and to the post-trial matters submitted by the appellant. Id. at ¶¶ 2 and 3.

In the appellant's brief, he asserts that the Addendum to the SJAR is "grossly misleading to the actual availability of the punishment of life *without* [*eligibility for*] *parole.*" Appellant's Brief of 31 Jan 2003 at 29 (emphasis added). The appellant specifically complains of paragraph 3f of the Addendum. Id.; SJAR Addendum of 26 Apr 1999 at ¶ 3f. In paragraph 3f, the SJA informed the convening authority that, at the time the original court-martial members heard the appellant's case, "the punishments allowed did not include the possibility of imprisonment for life *without* [*eligibility for*] *parole.*" SJAR Addendum of 26 Apr 1999 at ¶ 3f (emphasis added). The SJA then informed the convening authority that "the [UCMJ] currently allows for the imposition of a sentence to confinement for life *without eligibility for parole.*" Id. (emphasis added). The SJA next informed the convening authority that the appellant was "originally tried *before* confinement for life *without* [*eligibility for*] *parole* was an available legal punishment." Id. (emphasis added). We find the SJA's statements are accurate and do not imply that the appellant would be subject to a punishment of life "without eligibility for parole." *See Wallace*, 58 M.J. at 764–68.

The appellant also asserts that the Addendum to the SJAR was "completely erroneous in that it advised the convening authority to approve a sentence to death [in paragraph 4a,] when death was not adjudged and where the actual sentence was confinement for life." Appellant's Brief of 31 Jan 2003 at 31; SJAR Addendum of 26 Apr 1999 at ¶ 4a. The appellant is correct in that paragraph 4a of the Addendum to the SJAR does include the language, "and sentence to death." Id. For the following reasons, we find, however, that this erroneous language amounting to a scrivener's error did not in any way mislead the convening authority as to the adjudged sentence before he acted on the appellant's case.

First, the SJAR informed the convening authority that the military judge sentenced the appellant "to be discharged from the United States Marine Corps with a dishonorable discharge and to be confined for life." SJAR of 10 Mar 1999 at ¶ 2b. Second, the SJA recommended to the convening authority that he approve the adjudged sentence in accordance with "the provisions of the *pretrial agreement* and order it executed with the exception of the dishonorable discharge, which *requires appellate review*." *Id.* at ¶ 3a (emphasis added). Third, the convening authority agreed in the presentencing agreement "to refer [the appellant's] case *noncapital,* resulting in the elimination of death as a possible sentence. The *purpose* and *intent* of this referral was that the accused *not* be *eligible* for a sentence of *death*[.]" Appellate Exhibit XVIII at ¶ 6(a) (emphasis added).

Fourth, in the Addendum to the SJAR, the SJA addressed all of the IMC's responses to the SJAR pertaining to the adjudged sentence at rehearing. SJAR Addendum of 26 Apr 1999 at ¶ 2. Fifth, in the convening authority's combined action and court-martial order (CAA & CMO), the adjudged sentence is correctly promulgated by the convening authority as "discharged from the United States Marine Corps with a dishonorable discharge and to be confined for life." CAA & CMO of 25 Jun 1999. Sixth, in his action, the convening authority approved the adjudged sentence and, except for the dishonorable discharge, ordered the confinement for life executed. *Id.* There was absolutely no mention of any punishment of a sentence of death being imposed on the appellant. *Id.*

Seventh, the CAA & CMO addressed the terms of the presentencing agreement to which the convening authority agreed to be bound, in part, "to refer the [appellant's] case non-capital for sentencing, eliminating death as a possible sentence[.]" *Id.* at 2. Eighth, when taking his action, the convening authority specifically stated that he "considered the results of trial, the record of trial, the presentencing agreement, the [SJAR], the submission of post-trial matters and *response* to the [SJAR] submitted by [IMC], both dated May [(sic)] 14, 1999, and the Addendum to the [SJAR] prior to taking this action." *Id.*

Ninth, the IMC addressed the adjudged sentence in his response to the SJAR. IMC's Response of 14 May (sic) 1999. Tenth, in post-trial matters submitted to the convening authority, the IMC addressed the appellant's sentence in part, when, in the appellant's plea for clemency, he told the convening authority that the appellant "does not ask that you release him from custody, nor does he ask that you *commute his life sentence* to a term of years so that he will be released at some certain date in the future." Post–Trial Matters of 14 May (sic) 1999 at ¶ 10 (emphasis added).

▇ In the appellant's brief, he further asserts that "there is no evidence in the record that [the] [a]ppellant was served with the [A]ddendum to the [SJAR][.]" Appellant's Brief of 31 Jan 2003 at 32. Having addressed the appellant's assertions of error in the Addendum above, we have further reviewed the Addendum to the SJAR for reference to new matter. Finding no "new matter" addressed in the Addendum to the SJAR, we also conclude that, while the SJA could have chosen to serve the Addendum to the SJAR on the appellant, there was no requirement for the SJA to serve the Addendum to the SJAR on the appellant. Accordingly, having addressed the appellant's assertions of error pertaining to the Addendum to the SJAR, we decline to grant relief.

### Instructions on Findings

▇ In the appellant's supplemental assignment of error, submitted pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), he asserts that error occurred when the military judge gave erroneous and repeatedly improper instructions to the members on voting procedures prior to findings. The appellant avers that this court should set aside the findings and the sentence and return the record to the convening authority, who may only order a non-capital rehearing; or, in the alternative, who may only affirm a conviction for a lesser offense and reassess the sentence. We disagree.

536

The Court of Appeals for the Armed Forces, in its decision on the appellant's case, remanded the record of trial to the Judge Advocated General of the Navy. *Thomas,* 46 M.J. at 316. Our superior court only authorized a rehearing on the sentence. *Id.* It is clear, based on this remand, that our authority over the convening authority's actions is limited. A military service Court of Criminal Appeals "can only take action that conforms to the limitations and conditions prescribed by the remand." *United States v. Montesinos,* 28 M.J. 38, 44 (C.M.A.1989). Accordingly, we are without authority to entertain the appellant's assertions attacking those instructions pertaining to the findings.

However, we note that the appellant's assertions were raised, considered, and previously rejected by this court in our initial determination on his motion for declaratory judgment. *Thomas,* 39 M.J. at 629–30. Further, our superior court resolved the issues pertaining to the findings of guilty in the Government's favor. *Thomas,* 46 M.J. at 312. Thus, even if this court had the authority to consider the appellant's assertion, relief would not be appropriate.

### Conclusion

Accordingly, we affirm the sentence, as approved by the convening authority.

Senior Judge CARVER, Senior Judge RITTER, Senior Judge PRICE, Judge VILLEMEZ, and Judge SUSZAN, concur.[3]

### Appellate Exhibit XVIII

### MEMORANDUM OF PRESENTENCING AGREEMENT

I, Sergeant Joseph L. Thomas, U.S. Marine Corps, the accused in a general court-martial, freely and voluntarily enter into this Agreement with the Convening Authority in my case, the Commanding General, 3d Marine Aircraft Wing, FMFPac. I certify that:

1. The finding of guilt in my case announced November 1988 has been affirmed by the United States Court of Appeals for the Armed Forces.

2. The sentence of death in my case has been set aside by the United States Court of Appeals for the Armed Forces.

3. At a sentencing rehearing I could be eligible for a sentence to death.

4. The purposes of this agreement are to benefit me by eliminating the death penalty as an authorized punishment, and to benefit the government by streamlining the resentencing procedure and addressing concerns regarding my eligibility for clemency and parole.

5. With paragraphs one (1) through three (3) as background, and with the intent of achieving those aims expressed in paragraph four (4), 1 further certify that for good consideration and after consultation with my defense counsel, I:

(a) Request trial by military judge alone for my sentencing rehearing and waive my right to members. While the trial and original sentencing hearing in this case was before a panel of officer and enlisted members, I expressly waive any right that I have to a sentencing rehearing before members;

(b) Waive my right to be considered for clemency by the Naval Clemency and Parole Board. I make this waiver pursuant to DODDIR 1325.4(J)(3)(a) and paragraph 410 of Part IV of SECNAVINST 5815.3H. By executing this waiver I agree to forego review of my case for clemency purposes; I agree to not request review of my case for clemency; and if offered clemency I agree to not accept clemency;

I understand that, pursuant to paragraph 410 of Part IV of SECNAVINST 5815.3H, once eligible to be considered for clemency an offender is automatically eligible to be considered for clemency every year thereafter. This Agreement is intended to operate as my waiver of that annual eligibility, and to eliminate the necessity of my filing a waiver of mandatory clemency review every year. My entry into this Agreement constitutes a permanent waiver of mandatory clemency review;

The purpose and intent of this waiver is that I neither be considered for nor receive

---

3. Chief Judge DORMAN and Judge REDCLIFF did not participate in the decision of this case.

clemency on my sentence; I execute this Agreement knowingly, voluntarily, and with a full understanding of my rights to clemency as implemented by SECNAVINST 5815.3H. Understanding those rights, I expressly waive my right to be considered for or given clemency;

(c) Waive my right to be considered for parole by the Naval Clemency and Parole Board. I make this waiver pursuant DOD-DIR 1325.4(J)(3)(b) and paragraphs 503 and 506 of Part V of SECNAVINST 5815.3H;

By executing this waiver I agree to forego review of my case for parole purposes, I agree to not request review of my case for parole, and if offered parole I agree to not accept parole. If it is found that an annual waiver of my right to parole is required by the Naval Clemency and Parole Board, this Agreement constitutes that annual waiver. My entry into this Agreement constitutes a permanent waiver of parole review;

The purpose and intent of this waiver is that I neither be considered for nor granted parole on my sentence; I execute this Agreement knowingly, voluntarily, and with a full understanding of my rights to parole as implemented by SECNAVINST 5815.3H. Understanding those rights, I expressly waive my right to be considered for or given parole;

(d) Waive any right I have to obtain the services of or personal appearance of a mitigation expert, or any other expert to consult with or to testify at my resentencing hearing. I also agree to waive any right I have to obtain the personal appearance of any other witness to testify at my resentencing hearing.

6. With paragraphs one (1) through three (3) as background, with the intent of achieving those aims expressed in paragraph four (4), and in exchange for the accused's knowing and voluntary waiver of certain rights as expressed in paragraph five (5), the Convening Authority agrees:

(a) To refer this case non-capital, resulting in the elimination of death as a possible sentence. The purpose and intent of this referral is that the accused not be eligible for a sentence to death;

(b) To designate as the place of confinement the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas. The purpose and intent of this designation is that the accused remain at the USDB throughout the term of his confinement, and that he not be transferred to the Federal civilian prison system;

The parties understand that this designation is only a recommendation, and does not guarantee that the accused will in fact remain at the USDB at Fort Leavenworth throughout the term of his confinement. The parties acknowledge that transfer to the federal civilian prison system may occur in the future, and that such transfer does not constitute a breach of this Agreement.

7. My defense counsel has fully advised me of the meaning and effect of the following provisions of the U.C.M.J.: Article 58a, Automatic forfeitures; Article 58b, Automatic reduction, and JAGMAN section 0152c, Automatic reduction of enlisted accused. I understand that the adjudged sentence is subject to any of these provisions, and that this Agreement will have no effect on the application of those provisions or the adjudged sentence.

8. I understand that if I fail to honor the terms of this Agreement then the Convening Authority may rescind this Agreement, making this Agreement null and void. Should this Agreement become null and void, the parties will be deemed to have returned to the positions that they were in before this Agreement.

In the event that this Agreement becomes null and void I understand and agree that, by entering into this Agreement, the Convening Authority has not prejudiced his right to refer this case to another rehearing at which death remains an authorized sentence; in so agreeing I hereby acknowledge and voluntarily waive any right I may have under the U.C.M.J. or Rules of Courts–Martial, including, without limitation, Article 63 and R.C.M. 810, to limit my sentence at a future rehearing to that authorized by this Agreement.

9. In the event that any provision of this Agreement is found to be invalid or unenforceable, the remaining provisions shall remain in full force and effect to the degree that they may be enforced consistent with the purposes of this Agreement.

10. The parties agree that for the purposes of this Agreement the sentence is considered to be in five parts: (1) punitive discharge; (2) confinement for life; (3) forfeiture of pay and/or allowances; (4) reduction in rate; and (5) any other lawful punishment (such as hard labor without confinement, restriction, reprimand, or fine).

11. This Agreement constitutes all the conditions and understandings of both the accused and the Convening Authority regarding the resentencing in this case. There are no other agreements, either written or oral, in this case.

By my signature I agree to be bound by the terms of this four (4) page Agreement:

| Accused: | s/Joseph L. Thomas<br>Joseph L. Thomas<br>Sergeant<br>U.S. Marine Corps | Jul 01 1998<br>Date |
|---|---|---|
| Counsel: | s/Philip Sundel<br>Philip Sundel<br>LCDR, JAGC, USNR | 30 Jun 98<br>Date |
| Approved: | s/F.M. McCorkle<br>F. McCorkle<br>Major General<br>U.S. Marine Corps<br>Commanding | 2 July 1998<br>Date |